J-S09003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ILYAS ABDULHADI | : | |
| Appellant | : | No. 639 EDA 2025 |

Appeal from the PCRA Order Entered March 6, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0808601-2006

BEFORE: MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED MAY 29, 2026**

Ilyas Abdulhadi (Appellant) appeals from the order dismissing his fourth petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

This Court previously summarized the facts underlying Appellant's convictions:

> On February 4, 2006, [Appellant] (… also known as "Il") and [his] co-conspirators, [sisters] Shakia Sutton [(Shakia)] and Aonyah Sutton [(Aonyah)], planned to rob Tito Lomax ([Lomax or the victim,] also known as "Shorty") at his home, [located] at 5024 Arch Street in … Philadelphia. Shakia and Aonyah met Lomax in a KFC restaurant at the corner of 52nd and Market Streets. [] Appellant was also present in the restaurant, seated behind Lomax at a different table. During the conversation, Lomax offered to pay Aonyah to come to his apartment and have sex with him. Aonyah accepted the offer, at which point Lomax stood up from the table and withdrew a money clip, which appeared to have

_____

[*] Former Justice specially assigned to the Superior Court.

several hundred dollars in it. Immediately thereafter, Appellant motioned for Shakia to meet him near the restaurant's bathroom. After Shakia explained to [] Appellant that Lomax intended to pay Aonyah three hundred [] dollars for sex, [] Appellant suggested that they rob Lomax.

After Lomax left the restaurant, Appellant approached [Shakia and Aonyah] and laid out a plan to rob Lomax. Aonyah left the restaurant and went to Lomax's apartment, where [] Appellant had instructed her to pretend as if she were going to have sex with Lomax, but to leave the front door of the building unlocked. Meanwhile, Appellant obtained a mask and a handgun for use in the robbery. A few moments after Aonyah arrived at Lomax's home, Appellant called her to ensure that he could safely enter the apartment. Appellant entered through the open front door and proceeded up the stairs with his gun drawn. [] Appellant, whose face was covered by the mask, demanded that Lomax hand over all of his money. As Lomax reached down, [] Appellant warned Lomax "don't make me do it." When Lomax reached down again, Appellant shot Lomax in the chest. Appellant pulled money from Lomax's back pocket. … Lomax died later that day in his apartment.

***Commonwealth v. Hadi***,[1] 981 A.2d 920 (Pa. Super. 2009) (unpublished memorandum at 2-3) (quoting Trial Court Opinion, 7/2/08, at 2-3) (some capitalization and punctuation modified).

Taqueena Toodle (Toodle) testified at trial that she grew up with Shakia and Aonyah, and Toodle's grandmother lived next door to Lomax. N.T., 11/13/07, at 91-92. Toodle testified that, on February 4, 2006, Shakia called her and asked her to check on her "neighbor," Lomax. ***Id.*** at 93. Shakia told Toodle that Shakia "and her sister and some guy" planned to rob Lomax at his residence, and Lomax had been shot. ***Id.*** Toodle called her mother and asked

_____

[1] In this Court's previous decisions, Appellant's name is variously styled as Ilyas Abdul Hadi, Ilyas Abdul-Hadi, and Ilyas Abdulhadi.

her to check on Lomax, after which Toodle's mother called the police. ***Id.*** at 94.

Later that night, at the police station, Toodle gave a written statement to Detective Gary White regarding the phone call she had received from Shakia. ***Id.*** at 95-96, 105-06. However, Toodle did not identify Shakia as the caller, but instead gave the detective the fake name, "Yolanda." ***Id.***; ***see also id.*** at 106 (Toodle testifying she "made up a name" because she "just wanted to tell what happened without getting involved, because my family still [has] to live there").

Toodle remained at the police station until the next morning, when she gave a second written statement to Detective David Baker (Detective Baker).[2] ***Id.*** at 116. According to Toodle, after Detective Baker informed her of the consequences of lying to police, she identified Shakia as the person who had called her, and identified photographs of Shakia and Aonyah. ***Id.*** at 96-104, 114-22; ***see also id.*** at 121-22 (Toodle agreeing that "once Detective Baker told [her] that [she] could be arrested for lying to the police," Toodle gave him "a truthful statement").

On February 5, 2006, Shakia waived her ***Miranda***[3] rights and gave a written statement to Detectives Crystal Williams and Grady Patterson, in

---

[2] Detective Baker was assigned as the lead detective in the Lomax murder investigation. ***See*** N.T., 11/13/07, at 79-80; N.T., 11/14/07, at 160, 245.

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

which Shakia implicated herself, Aonyah, and Appellant in Lomax's murder. **See** N.T., 11/8/07, at 160-67; N.T., 11/14/07, at 134-36. On February 10, 2006, Aonyah waived her **Miranda** rights and gave a written statement to Detectives Crystal Williams and Gary White, in which Aonyah admitted her participation in Lomax's murder and identified Appellant as the shooter. **See** N.T., 11/13/07, at 174-82; N.T., 11/14/07, at 138-44, 161.[4]

On February 8, 2006, Joshua Jones (Jones) gave a written statement to Detectives Donald Marano (Detective Marano) and Dominick Mangoni (Detective Mangoni). **See** N.T., 11/9/07, at 137; N.T., 11/13/07, at 56-68. Jones stated that, at the time of the shooting, he was "chilling" on a street corner near Lomax's residence with three friends, including a brother of Shakia and Aonyah. N.T., 11/13/07, at 60. Jones told the detectives he heard a gunshot, and "right after the shooting I saw this girl by the name of Aonyah and this dude I know as Il coming out of the house where Shorty lives." **Id.** Jones further stated that, a few minutes later, Shakia called him and told him that "she got a phone call from Aonyah and that Shorty was dead." **Id.** at 61. Jones indicated he and Shakia went to Lomax's front door and found it locked. **Id.**

---

[4] On December 19, 2006, at the District Attorney's office, Detectives Baker and Crystal Williams took a second written statement from Aonyah, in which she stated Appellant had pressured her into participating in the robbery. **See** N.T., 11/13/07, at 183-85; N.T., 11/14/07, at 145-47.

- 4 -

Jones told the detectives that, the day after the shooting, Shakia related to Jones that she, Aonyah, and "Il" had planned to rob Lomax, and that Lomax "was reaching for more money or a gun and Il got nervous and Il shot him." *Id.* Jones stated he had met "Il" at a bar earlier that year, saw him almost every weekend, and knew him to sell "Xan[ax] and stuff." *Id.* at 63-64.

On February 28, 2006, Detectives Marano and Mangoni again interviewed Jones. *Id.* at 68. In a second written statement, Jones clarified that certain feminine pronouns in his first statement referred to Shakia and Aonyah. *Id.* at 69-70. Jones also indicated he had not spoken to "Il" since the shooting, stating, "I don't even know Il like that. I just know him as the pill guy from 52nd Street." *Id.* at 70.

This Court previously summarized what next transpired:

On March 14, 2006, … Officer Tony Waters [(Officer Waters)] encountered Appellant walking southbound on 56th Street in the 19th Police District. Officer Waters recognized [] Appellant from a wanted poster [issued in connection with Lomax's murder,] and stopped him for investigation. At the officer's request, Appellant produced a Pennsylvania driver's license with a name matching the name on the wanted poster. Officer Waters also compared Appellant's face to the … wanted photo and determined that Appellant was the person on the poster. [Officer Waters arrested Appellant.]

After being informed of his [**Miranda**] rights verbally and in writing, Appellant gave a full confession [to Detectives Marano and Howard Peterman (Detective Peterman)]. [Appellant] told the detectives that he robbed and shot [] Lomax using a 9mm handgun, split the money with Aonyah [], and then disposed of the gun by giving it to an unnamed associate outside of Philadelphia.

- 5 -

*Hadi*, 981 A.2d 920 (unpublished memorandum at 3) (quoting Trial Court Opinion, 7/2/08, at 3-4).

The Commonwealth subsequently charged Appellant with one count each of first-degree murder, conspiracy to commit murder, robbery, and possessing an instrument of crime (PIC).[5] The Commonwealth also charged Shakia and Aonyah with related offenses, including third-degree murder and conspiracy to commit murder. Before Appellant's trial, Shakia and Aonyah entered into plea agreements which required them to testify against Appellant. *See* N.T., 11/8/07, at 170 (Shakia testifying the Commonwealth agreed to recommend a sentence of 12½ to 25 years' imprisonment if she testified truthfully); N.T., 11/13/07, at 186 (Aonyah testifying the Commonwealth would recommend a sentence of 15 to 30 years' imprisonment if she testified truthfully).

On October 16, 2007, Appellant filed a motion to suppress his confession. On November 7, 2007, the trial court held a suppression hearing, at which Detective Marano agreed that Appellant had been held at the police station for nineteen or twenty hours before the interview took place. N.T., 11/7/07, at 63. Detective Marano further agreed that his file did not include a notation indicating Appellant had been offered food, water, or an opportunity to use the bathroom. *Id.* at 66-67. Deiris Dow, a friend of Appellant, testified

_____

[5] 18 Pa.C.S.A. §§ 2502(a), 903(a)(1), 3701(a)(1)(i), 907(a).

that Appellant had taken ten Xanax pills and drank "half a bottle of syrup" on the day of his arrest, and was noticeably intoxicated. *Id.* at 89-90. Appellant also argued his confession stemmed from an illegal arrest, emphasizing that the Commonwealth had failed to produce the wanted poster, which Officer Waters testified had been given to him by Officer Von Williams. *Id.* at 14-15, 100-01.

At the hearing's conclusion, the trial court denied the suppression motion. *Id.* at 102-03 (trial court crediting Officer Waters's testimony that he had seen the wanted poster; finding Appellant was not intoxicated at the time of his confession; and observing the effect of any drugs Appellant may have consumed would have dissipated during the nineteen hours preceding his confession); *see also* Trial Court Opinion, 7/2/08, at 7 (finding Appellant had not been "deprived of necessities, such as food, water, or access to the bathroom").

The matter proceeded to a jury trial on November 8-16, 2007. The Commonwealth presented testimony from Shakia, Aonyah, Jones, and Toodle, as well a medical examiner and the following police officers: Officer Timothy Dunne, Sergeant Deanthonis Edwards, Investigator William Whitehouse,

Detective Mangoni, Officer Waters, Detective Crystal Williams, Officer Ernest Bottomer, Officer Jerold Harris, and Detective Peterman.[6]

Shakia and Aonyah both testified to their participation with Appellant in the planned robbery of Lomax, and both identified Appellant as the shooter. **See** N.T., 11/8/07, at 132-239; N.T., 11/9/07, at 79-125; N.T., 11/13/07, at 126-201; N.T., 11/14/07, at 13-115. Detective Peterman read Appellant's written confession to the jury. **See** N.T., 11/14/07, at 232-38.[7]

Pertinently, in his trial testimony, Jones recanted significant portions of his earlier written statement. Jones confirmed he told Detectives Marano and Mangoni that he had been on a nearby street at the time of the shooting and, a few minutes later, Shakia told him Aonyah had called and said Lomax was dead. N.T., 11/9/07, at 141-42, 147-48. Jones further confirmed he told the detectives that, the next day, Shakia told him that she, Aonyah, and another individual had planned to rob Lomax. **Id.** at 148-49.

However, Jones denied all portions of his statement regarding "Il," testifying, "I don't know no Il." **Id.** at 143. Jones claimed he had heard of Appellant but had never seen him. N.T., 11/13/07, at 37. Jones denied telling

---

[6] Pertinently, the following officers did **not** testify: Detective Baker, Officer Von Williams, Detective Nathaniel Williams, Detective Gregory Singleton, and Lieutenant Melvin Williams.

[7] On cross-examination, Detective Peterman agreed Appellant had been held at the police station for twenty hours before his interview, and Detective Peterman did not know whether Appellant had been offered food, water, or use of the bathroom. N.T., 11/14/07, at 255-56.

the detectives he had seen Aonyah and Appellant exiting Lomax's residence after the shooting, N.T., 11/9/07, at 142-43, 146-47; denied providing a physical description of Appellant, N.T., 11/13/07, at 36; and denied that Shakia had told him Appellant was involved, *id.* at 34.

Jones testified that, on February 8, 2006, the detectives had handcuffed him and taken him to the police station without telling him why. *Id.* at 19-20. He stated the detectives threatened him with life imprisonment, but did not inform him of any charges against him or allow him to make a phone call or contact a lawyer. *Id.* at 20. Jones denied that the signature on the February 8, 2006, statement was his, saying, "I don't sign like that." N.T., 11/9/07, at 139; *see also id.* at 161 (Jones admitting he signed photographs identifying Shakia and Aonyah on February 8, 2006, but maintaining, "I didn't sign nothing but pictures that day"). Jones claimed he had never seen the written statement until a defense investigator showed it to him the month before Appellant's trial. N.T., 11/13/07, at 14.[8] Jones agreed that, while he

_____

[8] Detective Mangoni testified that he and Detective Marano interviewed Jones on February 8, 2006. N.T., 11/13/07, at 56-57. Detective Mangoni testified the detectives did not threaten Jones, and that Jones had not been handcuffed and was not under arrest. *Id.* at 72, 84-85. Detective Mangoni testified that he typed Jones's statement during the interview, in Jones's presence. *Id.* at 58. According to Detective Mangoni, a third detective (Detective Mostovyk) read the statement back to Jones in Detective Mangoni's presence. *Id.* at 67-68. Jones then indicated he had no corrections and signed each page of the statement. *Id.*

was in jail on unrelated charges in May 2007, Appellant's cousin had been his cellmate for a month. *Id.* at 6; N.T., 11/9/07, at 144-45.

At the trial's conclusion, the jury convicted Appellant of all charges. Immediately following trial, the trial court sentenced Appellant to life imprisonment for first-degree murder.[9]

Appellant timely appealed. This Court previously summarized the ensuing procedural history as follows:

> [We] affirmed [Appellant's] judgment of sentence on July 14, 2009, and our Supreme Court denied allowance of appeal on March 10, 2010. *See Commonwealth v. Hadi*, 981 A.2d 920 (Pa. Super. 2009) (unpublished memorandum), *appeal denied*, 605 Pa. 695, 990 A.2d 728 (2010).

> On December 6, 2010, Appellant filed a timely *pro se* PCRA petition. The court appointed counsel, who filed an amended petition and a supplemental petition raising claims of ineffective assistance of counsel. The court subsequently issued appropriate notice per Pa.R.Crim.P. 907, and ultimately denied relief on November 1, 2013. This Court affirmed the denial of PCRA relief on September 25, 2014, and our Supreme Court denied allowance of appeal on December 17, 2014. *See Commonwealth v. Abdulhadi*, 107 A.3d 236 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 629 Pa. 633, 105 A.3d 734 (2014).

> On November 16, 2017, Appellant filed another *pro se* PCRA petition. Appellant subsequently retained counsel, who filed an amended PCRA petition. The PCRA court dismissed the petition as untimely on September 28, 2018. This Court affirmed the denial of PCRA relief on September 19, 2019. *See Commonwealth v. Hadi*, 221 A.3d 1270 (Pa. Super. 2019) (unpublished memorandum).

_____

[9] The trial court imposed concurrent prison sentences for conspiracy (10 to 20 years), robbery (10 to 20 years), and PIC (2½ to 5 years).

Appellant filed [a third] PCRA petition[,] *pro se*[,] on April 14, 2020, alleging police misconduct by [Detective Baker,] a detective involved in Appellant's case. Appellant invoked the "newly-discovered fact" exception to the PCRA time-bar,[10] arguing that he became aware of the alleged police misconduct through research he conducted in the law library on March 20, 2020. Specifically, Appellant claimed he reviewed cases in which the lead investigator in Appellant's case, Detective Baker, was found to have falsified and tampered with evidence [in unrelated cases]. Appellant stated that he uncovered another case in his research showing that Detective Baker utilized coercive interrogation procedures.[11] Appellant insisted that Detective Baker committed similar misconduct in Appellant's case.

---

[10] "If a PCRA petition is untimely, a court lacks jurisdiction." **Commonwealth v. Reeves**, 296 A.3d 1228, 1230-31 (Pa. Super. 2023). Under the PCRA, all petitions must be filed within one year of the date the judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review … or at the expiration of time for seeking the review." **Id.** § 9545(b)(3). "However, a petitioner may overcome the PCRA's time-bar if he pleads and proves one of the statutory exceptions set forth in 42 Pa.C.S.A. § 9545(b)." **Reeves**, 296 A.3d at 1231. The newly-discovered fact exception allows an otherwise untimely claim where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S.A. § 9545(b)(1)(ii). Further, any petition attempting to invoke one of the timeliness exceptions "shall be filed within one year of the date the claim could have been presented." **Id.** § 9545(b)(2).

[11] Appellant cited **Wright v. City of Philadelphia**, 229 F.Supp.3d 322 (E.D. Pa. 2017), a civil action against "the City of Philadelphia and 11 individuals," including Detective Baker, in which Wright claimed that police misconduct led to his "wrongful conviction for a 1991 rape and murder." **Id.** at 325 (stating Wright was later exonerated by DNA evidence which "conclusively implicate[d]" another perpetrator). Wright alleged that Detective Baker and other officers took false witness statements and withheld exculpatory evidence. **Id.** at 340. In the memorandum Appellant cited, the district court denied the defendants' motion to dismiss Wright's complaint. **Id.** at 325; **see also** Third PCRA Petition, 4/14/20, ¶ 5 (citing **Wright**).

*(Footnote Continued Next Page)*

That same day, Appellant also filed a motion for discovery requesting a copy of police files that reflect misconduct reports, fabrication of evidence, coercive interrogation practices, and any allegations of illegal practices documented against Detective Baker and other officers. On January 29, 2021, the [PCRA] court issued Rule 907 notice. Appellant filed a supplemental PCRA petition on February 22, 2021, claiming that he received a "[Police Bureau of Investigation (PBI)] findings sheet" from the Commonwealth for the first time in October 2020, showing that the District Attorney's Office had knowledge about Detective Baker's misconduct before Appellant's case proceeded to trial. Appellant suggested that the Commonwealth withheld this information, constituting a violation under **Brady v. Maryland**, 373 U.S. 83 … (1963). Appellant further claimed the court had jurisdiction to review his **Brady** claim based on the "governmental interference" exception to the PCRA time-bar.[12]

On June 11, 2021, the PCRA court dismissed the petition as untimely. The court did not issue a separate order expressly denying Appellant's motion for discovery, but the record suggests the court's order denying PCRA relief also denied the outstanding discovery motion. Appellant timely filed a *pro se* notice of appeal

_____

Appellant also referred to Detective Baker's alleged misconduct in the investigation of Chester Hollman for a 1991 murder. **Id.** ¶¶ 6-7; **see also** Supplemental Third PCRA Petition, 2/21/21, ¶ 18 (citing **Commonwealth v. Hollman**, 69 A.3d 1300, 544 EDA 2012, (Pa. Super. Mar. 25, 2013) (unpublished memorandum)). In **Hollman**, during 2012 PCRA proceedings, a witness recanted her trial testimony and alleged her statement inculpating Hollman had been coerced by police. **Hollman**, 69 A.3d 1300 (unpublished memorandum at 3, 5). Detective Baker testified that the witness's statement had been voluntary, and denied any threats or coercion. **Id.** (unpublished memorandum at 6-7). The PCRA court denied relief, determining the recanting witness's PCRA hearing testimony was not credible, and that her inculpating statement had not been coerced. **Id.** (unpublished memorandum at 8). This Court affirmed the PCRA court's order. **Id.** (unpublished memorandum at 12).

[12] The governmental interference exception allows an otherwise untimely claim where "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]" 42 Pa.C.S.A. § 9545(b)(1)(i).

on July 6, 2021. On July 8, 2021, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant timely complied on July 27, 2021. The next day, Appellant retained private appellate counsel.[13] Appellate counsel did not seek to amend the *pro se* Rule 1925(b) statement *nunc pro tunc*. On July 30, 2021, while the appeal was pending and while represented by appellate counsel, Appellant submitted a *pro se* document to the PCRA court attaching an affidavit from [] Jones, in which [] Jones purported to recant his trial testimony against Appellant. As the PCRA court had already dismissed the petition, the court declined to address the affidavit.

***Commonwealth v. Abdul-Hadi***, 290 A.3d 700, 1387 EDA 2021 (Pa. Super. 2022) (unpublished memorandum at 1-4) (footnotes added; one original footnote incorporated into body).

Appellant argued the PCRA court erred in failing to grant his motion for discovery, and in dismissing his third PCRA petition without a hearing, despite new evidence that Detective Baker had committed misconduct in three unrelated cases. ***Id.*** (unpublished memorandum at 4-6). Appellant also requested that this Court remand the matter to the PCRA court to enable Appellant to supplement the record with Jones's affidavit. ***Id.*** (unpublished memorandum at 6-7).

On December 22, 2022, we affirmed the dismissal of Appellant's third PCRA petition. ***See generally id.*** We noted that, though Appellant's petition was facially untimely,

> Appellant does not present any argument on appeal concerning how the claims raised in his *pro se* PCRA petition (related to police

_____

[13] This counsel continued to represent Appellant in connection with his fourth PCRA petition, including the instant appeal.

- 13 -

misconduct) or supplemental PCRA petition (related to the *Brady* violation) satisfy any of the exceptions to the PCRA time-bar. Instead, Appellant only advances an argument concerning a time-bar exception—specifically, the "newly-discovered facts" exception—relative to [Jones's] affidavit…. [H]owever, Appellant did not present [Jones's] affidavit … in the PCRA court prior to the court's denial of PCRA relief.  Instead, Appellant produced [Jones's] affidavit via a *pro se* application for relief, while his appeal was already pending, and after Appellant had already secured appellate counsel.  Thus, Appellant's filing concerning [] Jones was technically a legal nullity, and Appellant is improperly presenting evidence of this affidavit for the first time on appeal. *See generally Commonwealth v. Williams*, 241 A.3d 353 (Pa. Super. 2020) (explaining general rule that *pro se* filings submitted by counseled defendants are generally treated as legal nullities)[; *s*]*ee also* Pa.R.A.P. 302(a) (stating issues not raised in lower court are waived and cannot be raised for first time on appeal). While Appellant seeks a remand to present evidence of [Jones's] affidavit, Appellant cites no appropriate legal authority to support his claim that remand is proper under these circumstances.

Further, although Appellant seems to claim that an evidentiary hearing and/or the grant of his motion for discovery would have produced sufficient evidence to overcome the PCRA time-bar, he makes no such express argument on appeal. *See Commonwealth v. Kane*, 10 A.3d 327[, 331] (Pa. Super. 2010) (stating this Court will not act as counsel and will not develop arguments on behalf of appellant).  Consequently, Appellant has not sufficiently argued on appeal how the claims raised in his PCRA petition or supplemental PCRA petition satisfy any time-bar exception. *See* 42 Pa.C.S.A. § 9545(b)(1).  Accordingly, Appellant's petition remains time-barred, and we affirm the order denying PCRA relief.

*Abdul-Hadi*, 290 A.3d 700 (unpublished memorandum at 8-10) (footnotes omitted).

On April 23, 2023, Appellant filed the instant, counseled PCRA petition, his fourth.  Appellant asserted (1) a *Brady* claim based on the Commonwealth's failure to disclose Detective Baker's misconduct history

before Appellant's trial, and (2) an after-discovered evidence claim based on Jones's affidavit. ***See generally*** Fourth PCRA Petition, 4/23/23.

Appellant alleged that, while his third PCRA petition was pending in the PCRA court, the Commonwealth provided Appellant with

> a Philadelphia Police Department Misconduct Disclosure showing that Detective Baker had been separated from the police department and suggesting that the [Internal Affairs Division (IAD)] investigative conclusion and PBI findings sheet should be reviewed. The PBI findings sheet suggested that [IAD] in fact concluded that Detective Baker engaged in misconduct, but it did not provide any details. [The PBI findings sheet] indicated that those details would be found in the IAD investigative conclusion. At that time, the Commonwealth had not produced [the IAD investigative conclusion] to [Appellant].

***Id.*** ¶ 7. Appellant previously included the PBI findings sheet in his supplemental third PCRA petition. ***Id.*** ¶ 8.

Appellant's fourth PCRA petition further alleged that, while his appeal from the dismissal of this third PCRA petition was pending in this Court, the Commonwealth "provided [Appellant with] details from Detective Baker's disciplinary file." ***Id.*** ¶ 12; ***see also id.***, appx. at 612-48. Though "the Commonwealth indicated it had previously provided that documentation to" Appellant, he alleged he "obviously had not received it or he would have used it" in the litigation of his third PCRA petition. ***Id.*** ¶ 12.

Appellant alleged this documentation included the IAD investigative conclusion, which sustained an allegation that, in 1998, Detective Baker "acted improperly by denying [an individual] legal representation … while [the individual] was in custody and the subject of a homicide investigation[.]" ***Id.***,

appx. at 613.  The documentation also included 2019 filings from further PCRA proceedings in *Hollman*, in which the Commonwealth conceded Hollman was entitled to PCRA relief.  *Id.*, appx. at 615-48.[14]

Appellant asserted the PCRA court should grant him a new trial because the Commonwealth violated *Brady* by failing to disclose Detective Baker's disciplinary records before Appellant's trial.  *Id.* ¶¶ 17-38.  Appellant argued his *Brady* claim was timely filed under both the newly-discovered fact exception and the governmental interference exception to the PCRA's time-bar.  *Id.* ¶ 18 (citing 42 Pa.C.S.A. § 9545(b)(1)(i)-(ii)).

Appellant's petition also claimed Appellant should receive a new trial "due to the [after-]discovered evidence of" Jones's affidavit.  *Id.* ¶ 39.

---

[14] The *Hollman* documentation included the Commonwealth's answer to Hollman's new PCRA petition, as well as joint stipulations agreed upon by the Commonwealth and Hollman, both filed in the *Hollman* PCRA court on June 24, 2019.  *See* Fourth PCRA Petition, 4/23/23, appx. at 615-48.  Therein, the Commonwealth requested that Hollman's sentence be vacated, conceding "the evidence in this case indicates that Hollman is likely innocent of the crimes for which he was convicted."  *Id.* at 616; *see also id.* at 629 (the Commonwealth stating that "recent DNA testing strongly suggests that—contrary to the Commonwealth's theory—Hollman was not the man who physically struggled with [the victim] before a second unidentified man shot and killed him").  The Commonwealth acknowledged that it had failed to disclose exculpatory evidence pointing to an alternative suspect.  *Id.* at 642-45.  The Commonwealth further acknowledged that it had failed to disclose evidence of the 1998 IAD investigation which sustained a misconduct allegation against Detective Baker.  *Id.* at 628, 643.  The Commonwealth noted that the PCRA court had relied on Detective Baker's testimony during the 2012 PCRA proceedings to support its finding that the recanting witness's recantation was not credible.  *Id.* at 627-28, 642; *see also* n.11 *supra*.

Appellant argued this claim was timely filed under the newly-discovered fact exception. *Id.* ¶¶ 40-41. Jones's June 3, 2021, affidavit stated as follows:

> In 2006, I gave a statement to the Philadelphia Homicide Dep[artment] about the murder of Shorty. I gave the statement because I was forced to by detectives. Because when I asked for a lawyer they said that I didn't need one, they said that they were only asking me questions and if I ain't do nothing wrong then I didn't have anything to worry about.
>
> I was only eighteen years old then and I was intimidated by them because they threatened me with life in prison and coerced me to talk to them. They even added stuff to what I did tell them. The things they say I said about [Appellant were] fabricated because I didn't know who he was back then. I never said I seen him and Aonyah come out of Shorty's house. I never said I met [Appellant] before, I didn't tell them what [Appellant] looked like and I didn't tell them where he be hanging at, they added all that info to what I was saying. I'm swearing to you that the detectives doctored up my statement because I only told them what Shakia told me. Matter of fact, I never even signed the statement and I don't know how my signature got on it.
>
> As far as them threatening me and coercing my statement, like I said I was only 18 and they had me locked up in a small room with no windows for what seemed like hours. They were telling me that they'll make sure I never see the streets again, my mom would have to see me behind bars for the rest of my life. They kept telling me they knew I had something to do with the murder. They told me they can make my life a living hell whenever I get locked up or they could help me out if I helped them out. Even the head detective, the chubby white guy, Baker, came in yelling and cursing, saying stuff like, "You're a piece of shit, we already got witnesses, if you don't talk now I'll have you buried in prison." He said he was a homicide detective and he knows how to get murderers off the street.
>
> I am willing to come and testify to these facts about my interactions with the homicide detectives.

*Id.*, appx. at 490-92 (some capitalization and punctuation modified).

On July 17, 2024, Appellant filed an amended fourth PCRA petition. Appellant (1) asserted the same after-discovered evidence claim based on Jones's affidavit, and (2) expanded his **Brady** claims based on new police misconduct disclosures made by the Commonwealth. **See generally** Amended Fourth PCRA Petition, 7/17/24. Appellant alleged

> the Commonwealth produced additional police misconduct disclosures [to Appellant's counsel] by email dated February 21, 2024 [(February 2024 disclosures)]. This disclosure included extensive misconduct records for various officers involved in this case such as Detective Baker, [] Officer Von Williams, Detective Nathaniel Williams, Detective Gregory Singleton, and Lieutenant Melvin Williams.

**Id.** ¶ 17; **see also id.**, Exhibit A (February 2024 disclosures).

Appellant alleged the February 2024 disclosures included a memorandum opinion in **Lazar v. Att'y Gen. of Pennsylvania**, 659 F.Supp.3d 599 (E.D. Pa. 2023). **See** Amended Fourth PCRA Petition, 7/17/24, ¶ 19; **see also id.**, Exhibit A. In **Lazar**, the district court granted Lazar's *habeas corpus* petition and awarded him a new trial in connection with his Pennsylvania state conviction for a 2007 murder, in part because "the Commonwealth violated **Brady** when it failed to turn over evidence of past incidents of Detective Baker's misconduct, all which could have been used to effectively impeach his testimony." **Lazar**, 659 F.Supp.3d at 616. The **Lazar** opinion stated that Detective Baker's "misconduct history includes three significant instances":

1. In 1998, [IAD] found that [Detective] Baker committed misconduct when he denied a suspect access to counsel during an interrogation where [Detective] Baker was seeking a confession;

2. In the 1991 investigation of Chester Hollman, later shown to have been wrongfully convicted, Detective Baker used coercive interrogation tactics that included fabricating a witness statement and urging the witness to sign it; and

3. In the 2003 investigation of Lavar Brown, another wrongful conviction, Detective Baker failed to disclose an initial contradictory witness statement and later testified that he had only interviewed the witness once.

*Id.* at 616-17.

The February 2024 disclosures also included documents from an IAD investigation which sustained allegations that, in 2006, Officer Von Williams associated with known criminals and made false statements during an official investigation. Amended Fourth PCRA Petition, 7/17/24, ¶¶ 21-23; *see also id.*, Exhibit A.

Additionally, the February 2024 disclosures included documents from an IAD investigation detailing that, in 2017, Detective Nathaniel Williams "improperly accessed police databases to help [his cousin] locate a woman to ask her on a date," and subsequently "fabricat[ed] an investigative file" in an effort to conceal his actions. *Id.* ¶ 24; *see also id.*, Exhibit A (documents indicating IAD sustained allegations that Detective Nathaniel Williams released confidential information, misused city equipment, abused his authority, and

lied regarding a material fact during the course of a departmental investigation).[15, 16]

> Finally, Appellant's amended petition alleged that Detective Peterman
>
> has been credibly accused of coercing four witness statements which led to the wrongful conviction [for a 2000 murder] and subsequent exoneration of Ronald Outlaw. Outlaw eventually sued Detective Peterman and others, and the [C]ity [of Philadelphia] settled the lawsuit for a reported 2.45 million dollars. *Outlaw v. Philadelphia*, [Civil Action] No. 21-1290, 2021 WL 3471168 (E.D. Pa. [Aug. 6,] 2021) [(unpublished memorandum)]….

Amended Fourth PCRA Petition, 7/17/24, ¶ 24. Appellant did **not** allege that Detective Peterman was included in any of the Commonwealth's misconduct

---

[15] As a result of this incident, Detective Nathaniel Williams was separated from the police force and charged with several crimes. *See Commonwealth v. Williams*, 331 A.3d 556 (Pa. 2025).

[16] The February 2024 disclosures also included documents detailing misconduct by Detective Gregory Singleton (in 2018) and Lieutenant Melvin Williams (in 2013). *See* Amended Fourth PCRA Petition, 7/17/24, Exhibit A. However, Appellant's amended petition did not explain how these officers were involved in the instant case, nor did it specifically argue that evidence of their alleged misconduct was material under *Brady*. *See generally id.* We observe that these officers' misconduct occurred years after Appellant's trial, and therefore the Commonwealth had nothing it could have disclosed to Appellant before trial. In its Rule 1925(a) opinion, the PCRA court opined that Appellant had not advanced *Brady* claims with respect to these officers. *See* PCRA Court Opinion, 5/19/25, at 4 n.2. Appellant makes no argument regarding these officers on appeal. *See generally* Appellant's Brief. To the extent Appellant's *Brady* claims purport to involve these officers, they are waived. *See Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 884-85 (Pa. Super. 2019) (stating that where an appellant fails to develop an argument on appeal, the issue is waived).

disclosures, or that the Commonwealth had otherwise acknowledged Detective Peterman had ever engaged in any misconduct. *See id.*

Appellant asserted the Commonwealth violated **Brady** by failing to disclose the disciplinary records of the aforementioned officers before Appellant's trial. *Id.* ¶ 31. Invoking both the newly-discovered fact exception and the governmental interference exception, Appellant argued each of his **Brady** claims had been timely filed within one year of the Commonwealth's disclosure of the misconduct records upon which they were based. *Id.* ¶¶ 29-30 (citing 42 Pa.C.S.A. § 9545(b)(1)(i)-(ii)).

On October 17, 2024, the Commonwealth filed a response opposing Appellant's amended fourth PCRA petition. On January 16, 2025, the PCRA issued Rule 907 notice of its intent to dismiss Appellant's amended petition without a hearing. The PCRA court determined that Appellant's **Brady** claims lacked merit, and his claim based on Jones's affidavit was untimely filed and, alternatively, lacked merit. Rule 907 Notice, 1/16/25, at 1-3. On February 5, 2025, Appellant filed objections to the Rule 907 notice. On March 6, 2025, the PCRA court entered an order dismissing the amended fourth PCRA petition.

Appellant timely appealed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925. Appellant presents two questions for our review:

> 1. Did the PCRA court err in denying the PCRA petition without holding an evidentiary hearing where [Jones,] a key witness against Appellant, … submitted an affidavit in which Jones stated that detectives coerced him into giving a false statement implicating Appellant in the crimes charged?

2. Should the PCRA court have granted the PCRA petition where the Commonwealth committed a **Brady** violation in failing to disclose evidence that [Detective Baker] had a lengthy history of serious misconduct spanning back to well before the conviction at issue in this case and that other officers involved in the investigation had been disciplined by [IAD], as well?

Appellant's Brief at 4 (issues reordered).

We review the dismissal of a PCRA petition to determine "whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Busanet**, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." **Id.** Further,

a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings.

**Commonwealth v. Shaw**, 217 A.3d 265, 269 (Pa. Super. 2019).

In his first issue, Appellant argues the PCRA court erred in dismissing without a hearing his after-discovered evidence claim based on Jones's affidavit. Appellant's Brief at 56-58. Appellant contends that "had the jury known the truth about Jones's coerced statement," the jury would likely have acquitted Appellant. **Id.** at 58. Appellant maintains his claim satisfies the newly-discovered fact exception to the PCRA's time-bar. **Id.** at 57. Appellant asserts he is entitled to an evidentiary hearing

so that Appellant can call Jones as a witness and demonstrate (1) the facts upon which the claim was predicated were unknown, and (2) these facts could not have been ascertained by the exercise of due diligence.

*Id.* at 58.

The Commonwealth counters that the "claim is untimely because although the affidavit was executed in 2021, the substance of the information it contains was known to [A]ppellant at the time of trial." Commonwealth Brief at 14. The Commonwealth maintains "the alleged facts contained in Jones's affidavit are not new; rather, they merely repeated his trial testimony," wherein Jones "already recanted his [written] statement and [claimed he had been subjected to] police coercion…." *Id.* at 15.

Before reaching the substantive merits of a PCRA claim, we must first consider its timeliness. *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014); *see also* n.10 *supra* (discussing PCRA timeliness requirements). As this Court explained in connection with Appellant's third PCRA petition, "Appellant's judgment of sentence became final on June 8, 2010, upon expiration of the time for Appellant to file a petition for writ of *certiorari* in the U.S. Supreme Court." *Abdul-Hadi*, 290 A.3d 700 (unpublished memorandum at 7). Appellant therefore "had until June 8, 2011, to file a timely PCRA petition." *Id.* (unpublished memorandum at 8). Accordingly, both Appellant's April 23, 2023, fourth PCRA petition and his July 17, 2024, amended fourth petition are facially untimely.

- 23 -

Regarding Jones's affidavit, Appellant invokes the newly-discovered fact exception to the PCRA's time-bar, which

> requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests; a petitioner must explain why he could not have learned the new facts earlier with the exercise of due diligence.

*Commonwealth v. Sanchez*, 204 A.3d 524, 526 (Pa. Super. 2019).[17] Moreover, "the focus of this exception is on the newly discovered facts, **not on a newly discovered or newly willing source for previously known facts**." *Commonwealth v. Lopez*, 249 A.3d 993, 999 (Pa. 2021) (quotation marks and citation omitted; emphasis in original).

Instantly, the PCRA court determined Appellant's claim based on Jones's affidavit was untimely, reasoning as follows:

> [Appellant] relies on the newly-discovered fact exception to the [PCRA's] timeliness requirement, premised upon an affidavit from [] Jones, in which [] Jones claims his statement implicating [Appellant] was coerced by detectives. Amended Fourth PCRA Petition, 7/17/24, ¶ 53. However, [Appellant] has failed to proffer any evidence showing how or when he first learned about [] Jones's recantation, or how [Appellant] was duly diligent in learning about it during the period of more than 17 years since

_____

[17] In *Commonwealth v. Abu-Jamal*, 941 A.2d 1263 (Pa. 2008), a PCRA petitioner alleged a new witness's testimony could not have been ascertained earlier by the exercise of due diligence because "its discovery was dependent on" the witness "coming forward." *Id.* at 1266. Our Supreme Court determined the petitioner failed to establish the newly-discovered fact exception, in part because he "offer[ed] no explanation as to why [the witness], who asserted he was aware of [the facts stated in his affidavit] in 1984, did not come forward with this information until nearly 20 years later." *Id.* at 1269.

- 24 -

[Appellant's] trial concluded. ***See id.*** ¶¶ 53-56. Accordingly, [Appellant's] claim does not satisfy the newly-discovered fact exception, and is therefore untimely. ***See Commonwealth v. Burton***, 158 A.3d 618, 629 (Pa. 2017) (discussing the newly-discovered fact exception).

PCRA Court Opinion, 5/19/25, at 14 (citations modified).

We agree with the PCRA court's analysis and conclusion. Our review confirms that Appellant failed to plead any facts that could satisfy the newly-discovered fact exception with respect to Jones's affidavit. Appellant baldly asserts he could establish the components of the newly-discovered fact exception at an evidentiary hearing, ***see*** Appellant's Brief at 58, but a hearing is not warranted unless a PCRA petitioner meets "[t]he burden at the filing stage … to allege or plead facts establishing an exception[.]" ***Commonwealth v. Brown***, 350 A.3d 12, 29 (Pa. 2026); ***see also*** 42 Pa.C.S.A. § 9545(b) (providing that a timeliness exception is inapplicable "unless the petition alleges" the components of the exception).

Appellant's amended petition failed to allege that the facts contained in Jones's affidavit were previously unknown to Appellant, or that Appellant could not have ascertained them earlier without due diligence. ***See*** Fourth Amended PCRA Petition, 7/17/24, ¶¶ 53-56. Appellant's amended petition did not describe how he learned of Jones's information or came into possession of the

affidavit. *Id.*[18] Appellant also made no attempt to explain why he could not have obtained Jones's information earlier with due diligence. *Id.*[19] Accordingly, we discern no error or abuse of discretion in the PCRA court's dismissal of this claim without a hearing. Appellant's first issue therefore merits no relief.

---

[18] Jones's affidavit is handwritten on the letterhead of "ILS Investigations" and is witnessed by Irving L. Samuel, who is identified as an investigator. Fourth PCRA Petition, 4/23/23, appx. at 490-92. Appellant did not explain his relationship to this investigator or describe any investigative efforts conducted on his behalf. *See generally* Amended Fourth PCRA Petition, 7/17/24.

[19] In both his amended petition and appellate brief, Appellant fails to acknowledge that Jones's affidavit is substantially identical to Jones's trial testimony. *See* Fourth Amended PCRA Petition, 7/17/24, ¶¶ 53-56; Appellant's Brief at 56-58. At trial, Jones recanted his prior written statement to police and denied having signed it; claimed detectives denied him access to counsel and threatened him with life imprisonment; and denied he had ever met Appellant or identified Appellant to police in connection with Lomax's murder. *See* N.T., 11/09/07, at 139, 142-43, 161; N.T., 11/13/07, at 19-20, 37; *see also* Fourth PCRA Petition, 4/23/23, appx. at 490-92. For the most part, Jones's affidavit is merely "a newly discovered or newly willing source for previously known facts." *Lopez*, 249 A.3d at 999.

Our review discloses the affidavit's only arguably "new" fact is Jones's identification of Detective Baker as having participated in the alleged coercion during Jones's police interview. *See* Fourth PCRA Petition, 4/23/23, appx. at 490-92. To the extent this detail is meaningful, Appellant fails to explain how he could not have learned it earlier with the exercise of due diligence. Despite Appellant's awareness that Jones had recanted his written statement and claimed police coercion at trial, Appellant's amended petition did not describe any effort to contact Jones in the 14 years between Appellant's 2007 trial and Jones's 2021 affidavit. *See* Fourth Amended PCRA Petition, 7/17/24, ¶¶ 53-56; *see also Commonwealth v. Padillas*, 997 A.2d 356, 364 (Pa. Super. 2010) (stating that a PCRA petitioner "who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence.").

In his second issue, Appellant argues the Commonwealth violated *Brady* by failing to disclose, prior to Appellant's trial, the misconduct records of Detective Baker, Officer Von Williams, Detective Nathaniel Williams, and Detective Peterman.

We first address the timeliness of Appellant's *Brady* claims. Appellant argues his *Brady* claims satisfy both the newly-discovered fact exception and the governmental interference exception.[20] Appellant's Brief at 33-35, 49-50. Appellant asserts he first learned the facts of Detective Baker's misconduct when the Commonwealth disclosed Detective Baker's disciplinary file to Appellant's counsel on August 31, 2022, during the pendency of Appellant's appeal from the dismissal of his third PCRA petition. *Id.* at 34. Appellant argues he timely filed his April 23, 2023, fourth PCRA petition within one year after receiving the August 31, 2022, disclosure. *Id.*

Appellant further asserts that he first learned of the other officers' misconduct (as well as additional misconduct by Detective Baker) when the Commonwealth made its February 2024 disclosures to Appellant's counsel. *Id.* at 34, 50. Appellant argues he timely filed his July 17, 2024, amended petition within one year thereafter. Appellant maintains he could not have

_____

[20] "Although a *Brady* violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence." *Abu-Jamal*, 941 A.2d at 1268.

learned the facts contained in the Commonwealth's disclosures earlier with the exercise of due diligence. *Id.* at 50; *see also* Amended Fourth PCRA Petition, 7/17/24, ¶ 51 (alleging the facts contained in the Commonwealth's disclosures were previously unknown to Appellant, and Appellant could not have uncovered those facts by the exercise of due diligence).

The PCRA court engaged in a separate timeliness analysis for each of the four officers implicated in Appellant's *Brady* claims. *See* PCRA Court Opinion, 5/19/24, at 5-7, 9-10, 11, 12. The PCRA court determined Appellant's claims were based on the Commonwealth's August 31, 2022, disclosure of Detective Baker's disciplinary file, and its February 21, 2024, misconduct disclosures involving multiple officers. *Id.* The PCRA court observed that Appellant filed his fourth PCRA petition and his amended fourth petition, respectively, within one year of these disclosures. *Id.* The court determined each of Appellant's *Brady* claims satisfied the newly-discovered fact exception because Appellant could not have raised them before receiving the disclosures. *Id.*

We discern no error in the PCRA court's determination as to the timeliness of the *Brady* claims involving Detective Baker,[21] Officer Von Williams, and Detective Nathaniel Williams.

_____

[21] We note that Appellant's third PCRA petition asserted a *Brady* claim regarding Detective Baker's alleged misconduct. However, our review confirms that Appellant's amended fourth petition satisfactorily alleged that
*(Footnote Continued Next Page)*

However, our review discloses that, with respect to Detective Peterman, the PCRA court's timeliness analysis is not supported by the record. The PCRA

_____

his instant **Brady** claim is based upon information the Commonwealth disclosed **after** the PCRA court dismissed Appellant's third petition.

Appellant's third petition relied on this Court's 2013 **Hollman** decision, which affirmed the PCRA court's finding that Hollman's misconduct allegations were not credible, **see** Supplemental Third PCRA Petition, 2/21/21, ¶ 18 (citing **Hollman**, 69 A.3d 1300 (unpublished memorandum)); whereas Appellant's instant claim relies on filings in the **Hollman** case from 2019 (included in the Commonwealth's August 31, 2022, disclosure), in which the Commonwealth conceded that Hollman was entitled to PCRA relief. **See** Fourth PCRA Petition, 4/23/23, appx. at 615-48.

Appellant's supplemental third PCRA petition also relied on the PBI findings sheet that indicated IAD had sustained a misconduct allegation against Detective Baker. **See** Supplemental Third PCRA Petition, 2/21/21, ¶ 18. However, Appellant's amended fourth petition alleged that the information disclosed to Appellant during the pendency of his third PCRA petition did not include the substantive facts of the underlying 1998 misconduct (*i.e.*, the IAD investigative conclusion page), which Appellant alleged the Commonwealth did not disclose to him until August 31, 2022. **See** Amended Fourth PCRA Petition, ¶¶ 7-12. In its response to Appellant's amended fourth petition, the Commonwealth conceded it was "unclear whether [the Commonwealth] inadvertently" omitted the "[IAD] investigative conclusion page" from its disclosure to Appellant during the pendency of his third PCRA petition. Commonwealth's Response to Appellant's Amended Fourth PCRA Petition, 10/17/24, at 15 n.2 (noting the Commonwealth sent the IAD investigative conclusion page to Appellant on August 31, 2022). Accordingly, we accept Appellant's allegation that he did not receive the document until August 31, 2022.

We further note that the **Lazar** memorandum, which discusses Detective Baker's misconduct in the 2003 Lavar Brown investigation, **Lazar**, 659 F.Supp.3d at 616-17, was first disclosed to Appellant in the February 2024 disclosures. **See** Amended Fourth PCRA Petition, 7/17/24, Exhibit A. Finally, we observe that Appellant's third PCRA petition cited Detective Baker's alleged misconduct in **Wright**, but his instant petition does not rely on **Wright**. **See generally id.**

court erroneously stated that the Commonwealth disclosed misconduct by Detective Peterman in its February 2024 disclosures, and concluded the claim was timely filed within one year thereafter. *See id.* at 12. Our review confirms that Detective Peterman was *not* included the February 2024 disclosures. *See* Fourth Amended PCRA Petition, 7/17/24, Exhibit A (February 2024 disclosures) and Exhibit B (February 21, 2024, email from the Commonwealth to Appellant's counsel, attaching police misconduct disclosures for Detective Baker, Officer Von Williams, Detective Nathaniel Williams, Detective Gregory Singleton, and Lieutenant Melvin Williams).[22]

A careful reading of Appellant's amended petition confirms Appellant did not allege that the Commonwealth made any misconduct disclosures involving Detective Peterman, either in February 2024 or at any other time. *See generally id.* Rather, Appellant alleged only that Detective Peterman "has been credibly accused of coercing four witness statements" in the Outlaw investigation, and that the City of Philadelphia settled a civil lawsuit brought by Outlaw against Detective Peterman and others. *Id.* ¶ 24 (citing *Outlaw*, 2021 WL 3471168)).

Appellant's amended petition contains no allegations germane to the timeliness of his *Brady* claim involving Detective Peterman. Appellant generally alleged that his *Brady* claims were timely because he filed them

_____

[22] The five attachments referenced in the Exhibit B email are the documents which comprise Exhibit A.

within one year after receiving the Commonwealth's misconduct disclosures. *See id.* ¶¶ 50-51. Because none of the disclosures involved Detective Peterman, however, these allegations do not apply to this distinct *Brady* claim.

In his appellate brief, Appellant purports to advance a separate timeliness argument in connection with his Detective-Peterman-related *Brady* claim. *See* Appellant's Brief at 50-51. But this argument simply repeats, almost verbatim, the allegations set forth in paragraphs 50-51 of the amended petition. *Compare* Appellant's Brief at 50-51 *with* Amended Fourth PCRA Petition, 7/17/24, ¶¶ 50-51. The argument does not reference Detective Peterman and, by its own terms, applies only to claims arising from the Commonwealth's misconduct disclosures. *See* Appellant's Brief at 50-51.

We emphasize that, with respect to both the newly-discovered fact exception and the governmental inference exception, a PCRA petitioner must plead that the information could not have been obtained earlier with the exercise of due diligence. *See Abu-Jamal*, 941 A.2d at 1268. Further, a petitioner must plead that he filed his petition within one year of the date the claim could have been presented. *Commonwealth v. Reid*, 235 A.3d 1124, 1149 (Pa. 2020) (citing 42 Pa.C.S.A. § 9545(b)(2));[23] *see also*

_____

[23] "Subsection 9545(b)(2) is a date-of-filing requirement akin to a statute-of-limitations because it simply directs a PCRA petitioner who invokes the timeliness exceptions to allege and prove that he filed his petition within one

*(Footnote Continued Next Page)*

*Commonwealth v. Bankhead*, 217 A.3d 1245, 1247-48 (Pa. Super. 2019) ("If the [governmental interference] exception applies, the petitioner must plead and prove that the petitioner presented the claim within [one year] of the earliest date he or she could have presented it, and that the petitioner exercised due diligence in obtaining the information." (citations omitted)).

Instantly, Appellant's amended petition fails to allege when or how he learned the information underlying his *Brady* claim involving Detective Peterman.[24]  *See* Fourth Amended PCRA Petition, 7/17/24, ¶ 24.  Appellant first asserted this claim in his July 17, 2024, amended petition.  Therein, Appellant explained that the amended petition was prompted by the Commonwealth's February 2024 disclosures.  *Id.* ¶¶ 17-18.  But Appellant never explained the provenance of his claim involving Detective Peterman, and the claim did not arise from the February 2024 disclosures.  *See generally id.*  As such, the amended petition failed to establish Appellant exercised due diligence with respect to this claim, or that he filed it within one

_____

year of the date that the claim could have been presented, *i.e.*, within one year of the day that the petitioner could have presented his claim to a court." *Commonwealth v. Towles*, 300 A.3d 400, 420 (Pa. 2023) (Donohue, J., concurring).

[24] We observe that, in his *pro se* supplemental third PCRA petition, Appellant included Detective Peterman in a list of officers whom Appellant contended were "alleged and found to have been corrupt or had questionable patterns of misconduct…."  Supplemental Third PCRA Petition, 2/22/21, ¶ 26; *see also* Motion for Discovery, 4/14/20, ¶ 3 (requesting documents "concerning the … pattern of misconduct" of, *inter alia*, Detective Peterman).

year of the date it could have been presented. Accordingly, we determine the claim regarding Detective Peterman does not satisfy either of the timeliness exceptions Appellant invokes. The claim is therefore untimely, and neither this Court nor the PCRA court has jurisdiction to reach its merits.[25]

We now turn to the merits of Appellant's **Brady** claims involving Detective Baker, Officer Von Williams, and Detective Nathaniel Williams.

> Initially, we recognize that a **Brady** claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Bagnall**, 661 Pa. 123, 235 A.3d 1075, 1084 (2020). Concerning alleged **Brady** violations, "[t]he defendant bears the burden of demonstrating that the Commonwealth withheld or suppressed evidence." **Commonwealth v. Smith**, 609 Pa. 605, 17 A.3d 873, 887 (2011) (citation omitted). "In the PCRA context, a petitioner must demonstrate that the alleged **Brady** violation so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Commonwealth v. Mickeals**, 335 A.3d 13, 24 (Pa. Super. 2025) (citation omitted).

**Commonwealth v. Shields**, 347 A.3d 734, 746 (Pa. Super. 2025).

> To establish a **Brady** violation, Appellant

> must show that: (1) the prosecution concealed evidence; (2) which was either exculpatory evidence or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment. **Commonwealth v. Paddy**, 800 A.2d 294, 305 (Pa. 2002); **Strickler v. Greene**, 527 U.S. 263, 281-82 (1999). To show prejudice, he must demonstrate a "reasonable probability that,

---

[25] The PCRA court concluded that Appellant's **Brady** claim involving Detective Peterman lacked merit. PCRA Court Opinion, 5/19/25, at 12-13. Because we determine Appellant failed to establish a PCRA timeliness exception, we affirm the PCRA court's dismissal of the claim on other grounds. **See Commonwealth v. Beatty**, 207 A.3d 957, 964 (Pa. Super. 2019) (stating that where a lower court has reached the correct result, an appellate court may affirm on any basis).

had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***Commonwealth v. Clark***, 961 A.2d 80, 89 (Pa. 2008) (internal quotation marks omitted). A reasonable probability for these purposes is one which "undermines confidence in the outcome of the trial." ***Kyles v. Whitley***, 514 U.S. 419, 434 (1995) (quoting ***United States v. Bagley***, 473 U.S. 667, 678 (1985)).

***Commonwealth v. Simpson***, 66 A.3d 253, 264 (Pa. 2013) (citations modified). Under ***Brady***, "[e]**vidence is material and must be disclosed if there is a reasonable probability that the result of the proceedings would have been different had it been disclosed**." ***Shields***, 347 A.3d at 746 (emphasis in original; citation omitted)).

Instantly, we first address Appellant's ***Brady*** claim involving Detective Nathaniel Williams. We observe that Appellant's brief fails to develop an argument that the Commonwealth concealed any evidence regarding Detective Nathaniel Williams prior to Appellant's trial. ***See generally*** Appellant's Brief. Appellant's argument mentions Detective Nathaniel Williams only in connection with his contention that "the cumulative impact of the withheld evidence" of several officers' misconduct would have resulted in a different verdict at Appellant's trial. ***Id.*** at 54; ***see also id.*** at 56 (arguing that "[h]ad the jury been aware" of the "documented history of misconduct" of several officers, including Detective Nathaniel Williams, "there is a reasonable probability that the jury would have acquitted" Appellant).

Critically, however, **Detective Nathaniel Williams's documented misconduct occurred in 2017, a decade after Appellant's 2007 trial**.

***See*** Fourth Amended PCRA Petition, 7/17/24, Exhibit A. The Commonwealth therefore had no evidence regarding Detective Nathaniel Williams that it could have disclosed prior to Appellant's trial. As Appellant failed to demonstrate that the Commonwealth withheld any evidence, his ***Brady*** claim involving Detective Nathaniel Williams fails.[26]

We address Appellant's remaining ***Brady*** claims together. Appellant argues the Commonwealth violated ***Brady*** by failing to disclose evidence of Detective Baker's and Officer Von Williams's prior misconduct. ***See*** Appellant's Brief at 33-47. Appellant maintains this evidence was material because he could have used it to "attack the quality of the investigation in this case." ***Id.*** at 40; ***see also id.*** at 42 (arguing "had the defense known about the misconduct, the defense could have and surely would have to call the entire investigation into doubt"). Appellant argues that, "when viewed cumulatively," the misconduct evidence could have prompted the jury to determine the investigation was unreliable. ***Id.*** at 56. Appellant maintains he suffered prejudice because, had this evidence been disclosed, "there is a reasonable probability that the jury would have acquitted" him. ***Id.***

---

[26] The PCRA court determined evidence of Detective Nathaniel Williams's misconduct was not material under ***Brady*** because the detective was not a witness at Appellant's trial, and because Appellant did not allege the detective committed misconduct in Appellant's case. ***See*** PCRA Court Opinion, 5/19/25, at 11. We further note that neither Appellant's brief nor his amended petition explains what role, if any, Detective Nathaniel Williams played in the instant case. ***See generally*** Appellant's Brief; Amended Fourth PCRA Petition, 7/17/24.

Appellant argues it is immaterial that neither Detective Baker nor Officer Von Williams testified as witnesses at Appellant's trial. *Id.* at 42-43, 46-47. Appellant asserts the Commonwealth violated ***Brady*** even though it "did not put the tainted officers on the stand," and instead "presented the case through the testimony of the officers who did not have undisclosed misconduct." *Id.* at 43.

Appellant emphasizes that Detective Baker was assigned as the lead detective in the case. *Id.* at 35. Appellant argues

> [t]he mere fact that Detective Baker did not personally conduct every single portion of the investigation does not mean that his pattern and practice of outrageous misconduct was immaterial. It very clearly was not immaterial. … Indeed, the defense could have called [Detective Baker] to testify and asked him about what he did with respect to the investigation as the lead investigator[,] and then [asked him] about his record. It also could have asked other police witnesses if they knew about Detective Baker's disciplinary record and whether he had done anything similar in this case.

*Id.* at 46. Appellant argues that, "[i]f Detective Baker had no problem with coercing statements and fabricating evidence, then the defense would have been able to argue that his partners felt the same way." *Id.* at 42.

Appellant also argues that he "would have been able to show … that the source of the wanted poster which may or may not have existed, Officer Von Williams, was also willing to lie during an investigation and was in fact under investigation during Appellant's case." *Id.* at 45-46; ***see also id.*** at 46 (arguing that if the Commonwealth had disclosed Officer Von Williams's prior misconduct, Appellant could have called the officer as a witness).

Appellant asserts that if Detective Baker "coerced statements or framed defendants in other cases, a jury certainly could have found it relevant in this case[,] where Appellant has consistently asserted his innocence and where the evidence was highly questionable." *Id.* at 35; *see also id.* at 36 (arguing the evidence against Appellant "was not very strong"). Appellant argues there was no "physical evidence" or "ballistics evidence" connecting him to the crime. *Id.* Appellant maintains that "the circumstances of [his] alleged confession were highly questionable," as the confession "was taken after Appellant had been in custody with no food, water, sleep, or proof that he had been offered the use of a bathroom for twenty hours." *Id.* Appellant also maintains the circumstances of his arrest were "suspect," because "police were never able to produce the wanted poster" that Officer Von Williams "supposedly provided … to the patrol officer who arrested Appellant…." *Id.* Finally, Appellant questions the reliability of "the only eyewitnesses," Shakia and Aonyah. *Id.* at 36-37. Appellant emphasizes that Shakia and Aonyah both received "generous" plea deals; admitted to using illegal drugs; and initially denied any involvement in the murder. *Id.*

Appellant relies on *Lazar*, in which the district court found the Commonwealth violated *Brady* by failing to disclose Detective Baker's prior misconduct, where Detective Baker "was a critical government witness." *Lazar*, 659 F.Supp.3d at 618; *see* Appellant's Brief at 43-45. There, Detective Baker

testified to the key piece of evidence tying Lazar to the murder, and he represented to the jury that Lazar could not have known the weapon used in the murder if he had not been there himself, adding legitimacy to Lazar's confession.

*Lazar*, 659 F.Supp.3d at 618; *see also id.* (finding Detective Baker's "testimony was critical to the Commonwealth's narrative about Lazar's suitcase—the only piece of physical evidence tying Lazar to the murder scene"). The district court determined that

had defense counsel been armed with evidence of [Detective] Baker's prior conduct, counsel would have been able to challenge his credibility in front of the jury. The jury had already seen [Detective] Baker give conflicting testimony under oath about his investigation of the backyard[, where the victim's daughter later found the suitcase]. Had the jury also heard that [Detective] Baker had testified less than truthfully in at least two other murder trials, they would have been even less likely to believe him— including his testimony regarding the suitcase.

*Id.* The district court concluded "the suppressed, favorable evidence of Detective Baker's misconduct is material, such that it would have 'undermine[d] confidence in the outcome of the trial,' in part because [Detective] Baker's testimony was so critical to the Commonwealth's case." *Id.* at 617 (quoting *Kyles*, 514 U.S. at 434).

The Commonwealth counters that Appellant "has failed to demonstrate that the truth-determining process was undermined" by the non-disclosure of the prior misconduct evidence. Commonwealth Brief at 12. The Commonwealth argues Appellant "failed to establish any nexus between the alleged misconduct in those unrelated matters and the investigation or prosecution of this case." *Id.* The Commonwealth asserts that,

- 38 -

given the roles the [implicated] officers played in this case[,] together with the surrounding circumstances, there is no reason to believe that the officers' misconduct in these other unrelated cases—even if evidence of the misconduct was somehow admissible—would have made a difference in this one.

*Id.*

The Commonwealth argues that the two witnesses Detective Baker interviewed—Aonyah and Toodle—both "testified that the formal statements he took from them were truthful and that [he] neither coerced nor threatened them." *Id.* (citing N.T., 11/13/07, at 99, 180). The Commonwealth emphasizes that Detective Baker "did not testify at trial, and [A]ppellant neither pleaded nor offered to prove that he committed any misconduct in the investigation of this case." *Id.* "Under these circumstances," the Commonwealth argues, "Detective Baker's misconduct in other matters had no relevance to this case and could not have provided a basis for upsetting the verdict." *Id.*

The Commonwealth further argues that Officer Von Williams did not testify at Appellant's trial; her "involvement in this case was minimal"; and Appellant "identifies no misconduct allegedly committed by … Officer Von Williams in this case." *Id.* at 13. The Commonwealth asserts the record therefore does not support Appellant's contention that evidence of Officer Von Williams's misconduct in an unrelated case would have undermined the evidence against Appellant. *Id.*

- 39 -

Finally, the Commonwealth argues "the cumulative impact of the alleged ***Brady*** violations" warrants no relief, because "none of the allegedly nondisclosed misconduct had any nexus to this case" and, "even considered cumulatively," the evidence "would not have resulted in a different outcome at trial." ***Id.*** at 14.

The PCRA court rejected Appellant's ***Brady*** claim involving Detective Baker, reasoning as follows:

> Here, [Appellant's] ***Brady*** claim fails because the record establishes that he was not prejudiced by the Commonwealth's failure to disclose the entire misconduct history of Detective Baker. ***See Simpson***, 66 A.3d at 264. The evidence presented at [Appellant's] trial, independent of Detective Baker's involvement, established that [Appellant] was guilty of all of the charges of which he was convicted. Specifically, [Appellant] confessed to detectives other than Detective Baker, namely, Detectives [] Peterman and [] Marano. ***See*** N.T., 11/14/07, at 221-42. Detective Peterman testified that, when [Appellant] was asked if he wanted to add anything to his statement, [Appellant] voluntarily apologized to the victim and his family. ***Id.*** at 238. Specifically, [Appellant] said, "I apologize to [the victim] first, then his family." ***Id.*** Moreover, the Superior Court, in affirming [Appellant's] judgment of sentence, stated that there was "overwhelming direct evidence of [Appellant's] guilt." ***Hadi***, 981 A.2d 920 (unpublished memorandum at 7).
>
> Additionally, although Detective Baker was involved with [Appellant's] case, Detective Baker did not testify, and therefore, his credibility was not at issue.[27] Moreover, Detective Baker did not interview the Commonwealth's key witness, Shakia [], who

_____

[27] The PCRA court noted Appellant's reliance on ***Lazar***, but determined "that case is readily distinguishable." PCRA Court Opinion, 5/19/25, at 9 n.5. The court observed that "[i]n ***Lazar***, Detective Baker's testimony was 'critical' to the Commonwealth's case, ***see Lazar***, 659 F.Supp.3d at 617[;] whereas, in [Appellant's] case, Detective Baker did not testify at all." PCRA Court Opinion, 5/19/25, at 9 n.5.

knew [Appellant] and testified to [Appellant's] involvement in the murder. N.T., 11/8/07, at 132-82; N.T., 11/14/07, at 133-35, 165-67. Detective Baker only took statements from Aonyah [] and [] Toodle, who have never claimed that their statements were coerced. *See* N.T., 11/13/07, at 97-104, 113-22, 174-85.

Accordingly, there is not a reasonable probability that, had the evidence of Detective Baker's misconduct in unrelated cases been disclosed to [Appellant], the result of [Appellant's trial] would have been different. Therefore, [Appellant] is not entitled to relief under *Brady* and the [PCRA c]ourt did not err in dismissing [Appellant's] claim. *See Brady*, 373 U.S. at 87; *Simpson*, 66 A.3d at 264.

PCRA Court Opinion, 5/19/25, at 7-9 (some citations modified; original

footnote omitted; footnote added).

Regarding Officer Von Williams, the PCRA court set forth the following

analysis and conclusion:

Officer [Von] Williams was not a witness at [Appellant's] trial, and was not involved in [Appellant's] case apart from giving [Appellant's] wanted poster to the officer who arrested [Appellant]. *See* Amended Fourth PCRA Petition, 7/17/24, ¶ 26; *see also* N.T., 11/14/07, at 120-21. Accordingly, Officer [Von] Williams's credibility was not at issue in [Appellant's] case. Because any evidence of Officer [Von] Williams's history of misconduct in unrelated matters was completely irrelevant to [Appellant's] case and would not likely have affected the result of [Appellant's trial], the evidence could not constitute *Brady* material, and the [PCRA c]ourt did not err in dismissing [Appellant's] claim. *See Brady*, 373 U.S. at 87; *Simpson*, 66 A.3d at 264. No relief is due.

PCRA Court Opinion, 5/19/25, at 10 (record citations modified).

Finally, the PCRA court concluded that "the cumulative effect of any

prejudice arising from" Appellant's individual *Brady* claims "would not have

affected the outcome of the case." *Id.* at 14.

We agree with the PCRA court's analysis and conclusion. Appellant's reliance on *Lazar* is unavailing, as the *Lazar* court repeatedly emphasized that Detective Baker's undisclosed misconduct could have been used to impeach **Detective Baker's credibility**, where Detective Baker was "a critical government witness" whose "testimony was critical to the Commonwealth's narrative about … the only piece of physical evidence tying Lazar to the murder scene." *Lazar*, 659 F.Supp.3d at 618; *see also id.* at 617 (concluding "the suppressed, favorable evidence of Detective Baker's misconduct is material" under *Brady* "in part because [Detective] Baker's testimony was so critical to the Commonwealth's case"). Instantly, Detective Baker and Officer Von Williams were not witnesses at Appellant's trial, and none of the Commonwealth's evidence against Appellant rested on their credibility.

Despite being assigned as the lead detective, Detective Baker obtained only two witness statements, neither of which was critical to the Commonwealth's case against Appellant. Detective Baker took Toodle's second statement, in which Toodle identified Shakia as the person who called her and told her Lomax had been shot. *See* N.T., 11/13/07, at 96-105, 114-22. Toodle did not inculpate Appellant. Further, Toodle never alleged Detective Baker coerced her second statement; rather, she readily agreed that she had lied in her first statement, and had given Detective Baker "a truthful

statement" after he advised her of the consequences of lying to police. *Id.* at 106, 121-22.

Detective Baker also obtained Aonyah's second statement on December 19, 2006. *See* N.T., 11/13/07, at 183-85; N.T., 11/14/07, at 145-47. Notably, Aonyah had already inculpated Appellant in her first statement on February 10, 2006. *See* N.T., 11/13/07, at 174-82; N.T., 11/14/07, at 138-44, 161. Further, Detective Crystal Williams was present with Detective Baker during Aonyah's second statement, and the record suggests that an assistant district attorney and Aonyah's defense counsel were also present. *See* N.T., 11/13/07, at 184 (Aonyah's testimony that she met with an assistant district attorney at the time she gave her December 19, 2006, statement); N.T., 11/14/07, at 24-33 (Aonyah's testimony that she gave her December 19, 2006, statement in connection with plea negotiations conducted by her counsel); *id.* at 145-47 (Detective Crystal Williams's testimony regarding Aonyah's second statement). Aonyah never alleged that her statement was coerced.

As for Officer Von Williams, her involvement in Appellant's case was limited to providing Officer Waters with the wanted poster that prompted him to arrest Appellant. *See* N.T., 11/7/07, at 14-15. Though Appellant apparently disputes the wanted poster's existence, it is beyond dispute that, at the time of his arrest, Appellant was, in fact, wanted for Lomax's murder, based on the statements of Shakia, Aonyah, and Jones.

Appellant argues that if the Commonwealth had disclosed the prior misconduct evidence, Appellant could have called Detective Baker and Officer Von Williams as witnesses. *See* Appellant's Brief at 46. Though we agree with Appellant that the prior misconduct evidence could have been used to impeach the credibility of Detective Baker and Officer Von Williams, we reiterate that none the Commonwealth's evidence against Appellant rested on their credibility. Rather, it rested on the credibility of the officers and lay witnesses who testified.

Appellant essentially argues he could have used the evidence of Detective Baker's and Officer Von Williams's misconduct in unrelated cases to attack the credibility of **other officers who had never been implicated in any misconduct**, and thereby suggest to the jury that **those officers** may have engaged in unspecified misconduct in this case. *See* Appellant's Brief at 42 (arguing that "[i]f Detective Baker had no problem with coercing statements and fabricating evidence, then the defense would have been able to argue that his partners felt the same way"). But Detective Baker's and Officer Von Williams's misconduct is not probative of other officers' credibility. In our view, the prior misconduct evidence has no relevance when offered for this purpose, and its non-disclosure therefore does not undermine our confidence in the verdict. *See Simpson*, 66 A.3d at 264; *see also Hadi*, 981 A.2d 920 (unpublished memorandum at 7) (determining the Commonwealth presented "overwhelming direct evidence of Appellant's guilt"). Accordingly,

we discern no error or abuse of discretion in the PCRA court's determination that Appellant was not prejudiced by the non-disclosure of this evidence.

Finally, our instant decision is in accordance with other, non-precedential decisions of this Court rejecting similar **Brady** claims based on the Commonwealth's non-disclosure of Detective Baker's misconduct history. In **Commonwealth v. Lewis**, 2160 EDA 2024, 2026 WL 35816 (Pa. Super. Jan. 6, 2026) (unpublished memorandum),[28] Detective Baker did not testify at trial and conducted only one interview of a witness who did not inculpate Lewis. **Id.** (unpublished memorandum at 8). We determined Lewis failed to establish materiality under **Brady**, analyzing as follows:

> The PCRA court found that the [undisclosed misconduct evidence] would have been material at trial "because the Commonwealth's suppression of Detective Baker's misconduct presented a serious flaw in the investigation, prosecution, and defense of [Lewis,]" because "[defense counsel] credibly testified that he would have used the [misconduct evidence] during trial to support his case." PCRA Court Opinion, 12/9/24, at 18.
>
> After a careful review of the record, we conclude that the PCRA court's legal conclusions are not supported by the record or relevant case law. We contrast this case with **Commonwealth v. Williams**, 215 A.3d 1019 (Pa. Super. 2019), in which this Court granted a new trial based on evidence of a police officer's misconduct. In **Williams**, the Commonwealth conceded the need for a new trial following the disclosure of "serious allegations" of police misconduct involving the sole witness in the case—the discredited officer. **Id.** at 1022. Moreover, the petitioner proffered an affidavit from another officer who contradicted the discredited officer's testimony at trial. **Id.** at 1025.

_____

[28] Non-precedential decisions of this Court filed after May 1, 2019, may be cited for persuasive value. **See** Pa.R.A.P. 126(b).

- 45 -

In contrast to **Williams**, while the Commonwealth acknowledged in [its recent misconduct disclosure] that Detective Baker committed misconduct in an unrelated 1998 interview, it did not concede that Detective Baker committed misconduct in [Lewis's] case. [Lewis] does not present any evidence of such misconduct. Moreover, unlike in **Williams**, in which the verdict relied solely on the discredited officer's testimony, Detective Baker conducted only [one witness interview], which was never presented to the jury, and [Detective Baker] did not have any further involvement in the case or testify at trial.

….

We, thus, conclude that [Lewis] failed to demonstrate that the [the evidence of Detective Baker's prior misconduct] was material, which is required to establish that the Commonwealth committed a **Brady** violation. Accordingly, the PCRA court erred in granting a new trial on the basis of this evidence.

**Lewis**, 2160 EDA 2024 (unpublished memorandum at 8-10) (original brackets omitted; record citation modified; footnote omitted); **see also id.** (unpublished memorandum at 10 n.6) (determining the evidence of Detective Baker's prior misconduct "would not likely compel a different verdict").

In **Commonwealth v. Cottle**, 334 A.3d 401, 2025 WL 314734 (Pa. Super. Jan, 28, 2025) (unpublished memorandum), Detective Baker did not testify at trial, but obtained a statement from Cottle's brother, in which the brother confessed that he and Cottle participated in a murder. **Id.** (unpublished memorandum at 10). A second detective was also present during the brother's confession, and a third detective read the statement back to the brother, who confirmed its accuracy. **Id.** Though the brother testified at trial that he did not remember giving the statement and had been high on drugs at the time of the interview, he "did not testify that he experienced

abuse or coercion at the hands of Detective Baker." *Id.* (quoting PCRA Court Opinion).

The PCRA court in *Cottle* concluded that "Detective Baker's unrelated misconduct in other cases would not have been relevant and, therefore, would not have been admissible at trial." *Id.* (quoting PCRA Court Opinion). "The PCRA court further explained that it denied [Cottle's] *Brady* claim … because 'evidence of Detective Baker's alleged misconduct in other cases is not material to [Cottle's] guilt or punishment.'" *Id.* (unpublished memorandum at 11) (quoting PCRA Court Opinion). We agreed with the PCRA court, determining that Cottle "cannot establish that he is entitled to relief on his *Brady* claim where [Cottle] was not prejudiced by any concealment of Detective Baker's misconduct in other cases." *Id.*; *see also Commonwealth v. Butler*, 281 A.3d 1059, 2022 WL 2092525 (Pa. Super. June 10, 2022) (unpublished memorandum at 9) (rejecting an after-discovered evidence claim based on Detective Baker's prior misconduct, where the PCRA petitioner "failed to establish a nexus between his convictions and the misconduct of Detective[] Baker … in other unrelated cases").

Our review discloses Detective Baker's involvement in Appellant's case was substantially similar to his involvement in the investigations underlying *Lewis* and *Cottle*. As in *Lewis*, Detective Baker took one non-inculpatory witness statement (Toodle). *See Lewis*, 2160 EDA 2024 (unpublished memorandum at 8). As in *Cottle*, another detective was present for the only

inculpatory witness statement Detective Baker took (Aonyah), and that witness had already inculpated Appellant in an earlier statement. *See Cottle*, *Cottle*, 334 A.3d 401 (unpublished memorandum at 10). Detective Baker did not testify at Appellant's trial, just as he did not testify at trial in either *Lewis* or *Cottle*. *See id.*; *Lewis*, 2160 EDA 2024 (unpublished memorandum at 8). These decisions therefore bolster our conclusion that Appellant's instant *Brady* claims merit no relief.

For the above-stated reasons, Appellant's *Brady* claims fail, and we therefore affirm the PCRA court's dismissal of his amended fourth PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/29/2026